Rene JOPE and Mary Jope, Plaintiffs,

v.

BEAR STEARNS & CO., a partnership; Painewebber Incorporated, a corporation; and Gilbert Johnson (also known as Jerome Muzinich), Defendants.

No. C–85–4863 SC.

United States District Court, N.D. California.

Nov. 15, 1985.

Arthur Levy, San Francisco, Cal., for plaintiffs.

Orrick, Herrington & Sutcliffe, San Francisco, Cal., for Bear Stearns & Co. and Gilbert Johnson.

Steefel, Levitt & Weiss, San Francisco, Cal., for Painewebber.

## ORDER RE MOTIONS TO COMPEL ARBITRATION, SEVER ARBITRABLE CLAIM, AND STAY PROCEEDINGS

CONTI, District Judge.

Plaintiff filed a First Amended Complaint in this action on August 22, 1985, seeking compensatory and punitive damages for violations of Rule 10b–5 of the Securities Exchange Act of 1934, breach of fiduciary duty, negligent securities account management, negligent employment and supervision, and negligence.

The matter is presently before the court on defendants PaineWebber Incorporated ("PaineWebber") and Gilbert Johnson's motion to compel arbitration of plaintiff's Fifth Cause of Action, and on defendants Bear Stearns & Co. ("Bear Stearns") and Gilbert Johnson's motion to stay proceedings pending arbitration of various causes of action in this case.

In May, 1982, plaintiffs opened an investment account at PaineWebber. Defendant Johnson served as plaintiffs' account executive at PaineWebber. In November, 1982, PaineWebber terminated Johnson's employment, apparently for reasons unrelated to plaintiffs' account. Bear Stearns then hired Johnson as an account executive "sometime around the end of 1982." Plaintiffs' Memorandum of Points and Authorities in Opposition to Bear Stearns' Motion to Stay, p. 3. Plaintiffs accordingly transferred their account to Bear Stearns in order to facilitate Johnson's continued management of their investment funds. In May, 1984, Bear Stearns terminated Johnson's employment. In July, 1984, plaintiffs filed the instant action, stating various federal and state securities claims relating to the manner in which Johnson handled their account while employed by PaineWebber and Bear Stearns.

On September 9, 1985, Bear Stearns and plaintiffs entered into a stipulation for arbitration of plaintiffs' Second through Fourth Causes of Action. The parties entered into the stipulation pursuant to ¶ 9 of the customer agreement between plaintiffs and Bear Stearns whereby plaintiffs agreed to arbitrate "any controversy arising out of or relating to [plaintiffs'] cash and/or margin accounts," except for "claims arising under the federal securities laws." Bear Stearns' Memorandum of Points and Authorities in Support of Motion to Stay, p. 2. On September 17, 1985, PaineWebber and plaintiffs entered into a stipulation for arbitration of plaintiffs' Sixth through Eighth Causes of Action. The parties entered into the stipulation pursuant to ¶ 10 of the customer agreement between plaintiffs and PaineWebber whereby plaintiffs agreed to arbitrate any dispute arising out of their PaineWebber securities account.

PaineWebber and Johnson now move to compel plaintiffs to arbitrate their Fifth Cause of Action charging movants with violation of Rule 10b–5. Section 2 of the United States Arbitration Act, 9 U.S.C. § 2, provides that,

"[a] written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

It is well established that "arbitration clauses are regarded with favor." *Pierson v. Dean, Whitter, Reynolds, Inc.*, 742 F.2d 334, 338 (7th Cir.1984). Accordingly, agreements to arbitrate are to be "liberally construed, and any doubts about the scope of an arbitration clause are to be resolved in favor of arbitration." *Atsa of California, Inc. v. Continental Insurance Co.*, 702 F.2d 172, 175 (9th Cir.1983); *see also, Moses H. Cone Hospital v. Mercury Construction*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983). Upon review of the record, the court finds that defendants' motion to compel has merit.

As plaintiffs note, the Ninth Circuit has generally held that "[c]laims arising out of alleged violations of federal securities laws ... are not arbitrable." *Kershaw v. Dean Whitter Reynolds, Inc.*, 734 F.2d 1327, 1328 (9th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 1750, (1985); *see also, Pierson*, 742 F.2d at 338. The Ninth Circuit has based its rulings upon *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), in which the United States Supreme Court held that predispute agreements to arbitrate claims that arise under § 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l* (2), are not enforceable. The *Wilko* Court,

"pointed to language in § 14 of the [1933 Act] ... which declares 'void' any 'stipulation' waiving compliance with any 'provision' of the ... [Act], and held that an agreement to arbitrate amounted to a stipulation waiving the [§ 12(2) private] right to seek a judicial remedy and was therefore void."

*Dean Whitter Reynolds Inc. v. Byrd*, 470 U.S. 213, —— n. 1, 105 S.Ct. 1238, 1240 n. 1, 84 L.Ed.2d 158, 162 n. 1 (1985). Although, by its terms, *Wilko* applies only to 1933 Act claims, numerous federal courts have extended its analysis to causes arising under § 10(b) of the Securities Exchange Act of 1934. *See Pierson; Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Moore*, 590 F.2d 823, 827–29 (10th Cir.1978); *Weissbuch v. Merrill Lynch, Pierce, Fenner & Smith*, 558 F.2d 831, 833–35 (7th Cir. 1977).

Recently, however, the Supreme Court has questioned the applicability of *Wilko* to 1934 Act claims. In *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 513, 94 S.Ct. 2449, 2454, 41 L.Ed.2d 270 (1974), the Court wrote that "a colorable argument could be made that ... the semantic reasoning of the Wilko opinion does not control [claims arising under the 1934 Act]." The Court noted that the provisions of the 1933 and 1934 Acts differ and that, "unlike § 12(2) of the 1933 Act, § 10b of the 1934 Act does not expressly give rise to a private cause of action." *Byrd*, 470 U.S. at ——, n. 1, 105 S.Ct. at 1240, n. 1, 84 L.Ed.2d at 162, n. 1. In *Byrd*, the Court referred to its dicta in *Scherk*, but refrained from deciding "the applicability of Wilko to claims under § 10(b) and Rule 10b–5 [as the question was] not properly before [the Court]." *Id.* In a separate concurrence, however, Justice White elaborated upon the arbitrability of 1934 Act claims, noting,

"Wilko's reasoning cannot be mechanically transferred to the 1934 Act ... Jurisdiction under the 1934 Act is narrower, being restricted to the federal courts ... More important, the [private] cause of action under § 10(b) and Rule 10b–5 ... is implied rather than express ... [Thus, unlike the non-waiver provision in the 1933 Act, t]he phrase [in the 1934 Act which prohibits parties from] 'waiv[ing] compliance with any *provision of this chapter*,' 15 U.S.C. § 78cc(a) ... (emphasis added), is ... literally inapplicable [to the arbitrability of 1934 Act claims]. Moreover, Wilko's solicitude for the federal cause of action—the 'special right' established by Congress ...—is not necessarily appropriate where the cause of action is judicially implied and not so different from the common law action ... I reiterate [these reservations] ... to emphasize that the question remains open and the contrary holdings of the

lower courts must be viewed with some doubt."

*Id.* 470 U.S. at —— – ——, 105 S.Ct. at 1244, 84 L.Ed.2d at 167–68.

Several lower courts have "accept[ed] *Byrd's* invitation to compel parties' compliance with express contractual obligations" to arbitrate 1934 Act claims. *Finn v. Davis,* 610 F.Supp. 1079, 1082 (D.Fla.1985) *see also, Marx v. Dean Whitter Reynolds, Inc.,* CCH Fed.Sec.L.Rep. ¶ 92,311 (C.D. Cal., Aug. 23, 1985); *West v. Drexel Burnham Lambert, Inc.,* CCH Fed.Sec.L.Rep. ¶ 92,327 (W.D.Wash., Aug. 15, 1985); *McMahon v. Shearson/American Express, Inc.,* CCH Fed.Sec.L.Rep. ¶ 92,319 (S.D. N.Y., Sept. 25, 1985); *Raiford v. Merrill Lynch, Pierce Fenner & Smith, Inc.,* CCH Fed.Sec.L.Rep. ¶ 92,269 (N.D.Ga., May 16, 1985); *Byrd v. Dean Whitter Reynolds, Inc.,* (on remand), CCH Fed.Sec.L.Rep. ¶ 92,225 (S.D.Cal., July 8, 1985); *Niven v. Dean Whitter Reynolds, Inc.,* CCH Fed. Sec.L.Rep. ¶ 92,059 (M.D.Fla., March 28, 1985); *Walch v. Dean Whitter Reynolds, Inc.,* CCH Fed.Sec.L.Rep. ¶ 92,060 (M.D. Fla., April 25, 1985); *Jarvis v. Dean Whitter Reynolds, Inc.,* 614 F.Supp. 1146, 1148– 50. At (D.Vt. Aug. 6, 1985); *contra: Geller v. Nasser,* CCH Fed.Sec.L.Rep. ¶ 92,227 (C.D.Cal., June 27, 1985).

■ In light of *Byrd,* the federal policy favoring arbitration, and the lower court trend towards permitting arbitration of 1934 Act claims, then, the court finds that plaintiffs' Fifth Cause of Action for violation of Rule 10b–5 is subject to the broad arbitration clause entered into between plaintiffs and movants. Plaintiffs argue in response that PaineWebber's customer agreement form violated SEC Release No. 15984, July 2, 1979, 17 SEC Dkt. 1167, 1169, which provides,

"Customers should be made aware prior to signing an agreement containing an arbitration clause that such a prior agreement does not bar a cause of action arising under the federal securities laws."

As defendants note, however,

"SEC Release No. 15984 is premised on the assumption that claims under the 1934 Act are in fact non-arbitrable ... [Moreover, t]he Release is merely an interpretive statement by SEC staff, and ... does not have the force of law ..."

Defendants' Memorandum, p. 6; *see also, Washington Federal Savings & Loan Association v. Federal Home Loan Bank Board,* 526 F.Supp. 343, 383–84 (N.D.Ohio 1981). Moreover, even though PaineWebber's arbitration clause did not specifically characterize statutory claims as arbitrable, the court finds "no warrant in the Arbitration Act for implying in every contract within its ken a presumption against arbitration of statutory claims." *Mitsubishi Motors v. Soler Chrysler-Plymouth,* 437 U.S. ——, ——, 105 S.Ct. 3346, 3353–54, 87 L.Ed.2d 444, 454.

Plaintiffs further argue that they should not be compelled to arbitrate their Rule 10b–5 claim because plaintiffs "were unaware of the arbitration clause" in PaineWebber's customer agreement. Plaintiffs' Memorandum, p. 11. It is well established, however, that failure to read a brokerage contract or "to inquire about the ramifications of [an arbitration] ... clause [cannot be used] to avoid the consequences of agreed-to arbitration." *Pierson,* 742 F.2d at 339. Accordingly, the court grants defendants motion to compel arbitration of plaintiffs' Fifth Cause of Action.

■ Defendants Bear Stearns and Gilbert Johnson next move this court to stay proceedings on plaintiffs' First Cause of Action pending arbitration of plaintiffs' remaining claims. Section 3 of the Arbitration Act, 9 U.S.C. § 3, provides,

"If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending ... shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement ..."

Where plaintiffs assert both arbitrable and nonarbitrable claims, district courts have,

> "discretion whether to proceed with the nonarbitrable claims before or after the arbitration and [have] ... authority to stay proceedings in the interest of saving time and effort for itself and litigants."

*Wilcox v. Ho-Wing Sit,* 586 F.Supp. 561, 567 (N.D.Cal.1984); *see also, Levya v. Certified Grocers of California, Ltd.,* 593 F.2d 857, 863–64 (9th Cir.1979), *cert. denied,* 444 U.S. 827, 100 S.Ct. 51, 62 L.Ed.2d 34 (1980). A court's determination to stay proceedings on non-arbitrable claims will be reversed only for abuse of discretion. *Mediterranean Enterprises, Inc. v. Ssangyong,* 708 F.2d 1458, 1465 (9th Cir.1983).

Upon review of the record, the court finds that a stay of proceedings is warranted in this case. As defendants note, federal arbitration policy "was designed to allow parties to avoid 'the costliness and delays of litigation' ..." *Scherk,* 417 U.S. at 510, 94 S.Ct. at 2453 (citations omitted). In the instant action,

> "plaintiffs' state claims predominate and ... judicial economy would be best served by staying these proceedings until those claims have been arbitrated ... Moreover, arbitration might resolve questions at issue in the securities fraud ... and may well obviate further litigation. In any case, the arbitrator is likely to decide issues that will, at least, streamline subsequent proceedings before this Court."

*Wilcox,* 586 F.Supp. at 567–68.

Plaintiffs argue in response that this court lacks discretion to stay claims "within the exclusive jurisdiction of the federal courts for reasons of economy." Plaintiffs' Memorandum of Points and Authorities in Opposition to Motion to Stay, p. 6. Plaintiffs rely for support on *Silberkleit v. Kantrowitz,* 713 F.2d 433 (9th Cir.1983), *Dimenstein v. Whiteman,* 759 F.2d 1514, 1517 (11th Cir.1985), and *Hill v. Bear, Stearns & Co.,* 759 F.2d 1518 (11th Cir. 1985). As defendants claim, however, *Silberkleit* is inapposite to this case because "Bear Stearns and Johnson have not asked this Court to abstain from jurisdiction over the Jopes' Rule 10b–5 claims in deference to any state court action." Defendants' Memorandum of Points and Authorities in Support of Motion to Stay, p. 5. Moreover, contrary to plaintiffs' suggestion, *Dimenstein* and *Hill* do not stand for the proposition that district courts are precluded from utilizing considerations of judicial efficiency to stay proceedings on non-arbitrable claims pending arbitration of other claims. Accordingly, the court grants defendants' motion to stay.

In accordance with the foregoing, it is hereby ordered that:

(1) PaineWebber and Gilbert Johnson's motion to compel arbitration of plaintiffs' Fifth Cause of Action for violation of Rule 10b–5 is granted;

(2) Bear Stearns and Gilbert Johnson's motion to stay proceedings on plaintiffs' First Cause of Action pending arbitration of plaintiffs' remaining claims is granted; and

(3) This case is set for further status at 10:00 a.m. on March 14, 1986. During the interim, the parties are ordered to proceed with all steps necessary to effectuate arbitration, and to advise the court of any dilatory behavior preventing the progress of this case through arbitration.