23 Mass. App. Ct. 25                                    25

Microwave Antenna Systems & Technology, Inc. *v.* Whitney-Pehl Construction Co.

MICROWAVE ANTENNA SYSTEMS & TECHNOLOGY, INC. *vs.*
WHITNEY-PEHL CONSTRUCTION CO., INC., & others.[1]

Middlesex.   September 8, 1986. — October 15, 1986.

Present: GREANEY, C.J., BROWN, & FINE, JJ.

*Collateral Estoppel. Arbitration*, Issue preclusion.

Discussion of the question whether issue preclusion principles are applicable
to arbitration proceedings. [28-29]

Arbitration proceedings with respect to a breach of contract dispute between
the owner and the general contractor on a building project were not
barred, on principles of collateral estoppel, by a prior action brought by
a subcontractor against the contractor in which the owner was ordered
to answer as trustee of funds held for the benefit of the contractor, where
judgment in the prior action entered solely on the basis of G.L. c. 246,
§ 19, for the wilful and knowing misrepresentation in the answer filed
on behalf of the owner as trustee. [29-31] BROWN, J., concurring.

CIVIL ACTION commenced in the Superior Court Department
on November 18, 1985.

The case was heard by *Hiller B. Zobel*, J.

*Anne J. White* (*Stanley M. Epstein* with her) for the plaintiff.

*Bruce G. McNeill* (*Patrick W. Hanifin* with him) for the
defendants.

FINE, J.  A Superior Court judge declined to give effect to
an arbitrator's award ordering Whitney-Pehl Construction Co.,
Inc. (Whitney-Pehl), to pay Microwave Antenna Systems &
Technology, Inc. (Microwave), $3,420.84. The judge stated
as his reason for so deciding that the matter determined by the
arbitrator had been previously litigated in a judicial proceeding.
The appeal, brought by Microwave, raises the issue whether
an arbitration award, otherwise properly made pursuant to a

---

[1] Charles E. Whitney and Brian Pehl, the sole officers and shareholders
of Whitney-Pehl Construction Co., Inc.

valid contract, may be without effect on grounds of issue pre-
clusion as a result of an earlier judicial proceeding and, if so,
whether the earlier litigation between the parties to this appeal
was such as to preclude the arbitrator from making the award
in issue. Although we comment briefly on general principles
of issue preclusion insofar as they may affect successive litiga-
tion of the same dispute before a court and an arbitrator, we
reverse the judgment of the Superior Court because, on our
view of the facts of this case, the principles of issue preclusion
do not apply.

1. *The Factual Setting.*

By way of general background, Microwave and Whitney-
Pehl,[2] as owner and general contractor, respectively, entered
into a construction contract on April 26, 1983. The contract
included a clause requiring that all disputes between the parties
arising out of the contract be decided by arbitration. Construc-
tion took place and payments were made, but disputes re-
mained.

a. *The first lawsuit.* Chris Coviello & Sons, Inc. (Coviello),
the paving subcontractor on the project, brought an action
against Whitney-Pehl alleging the latter's failure to pay
$20,050.25 for work performed. Summary judgment was en-
tered for Coviello on its claim against Whitney-Pehl, which
offered no opposition. Subsequently, on Coviello's motion,
Microwave was brought into the case and ordered to answer
as trustee of funds being held for the benefit of Whitney-Pehl.
Coviello moved that the trustee, Microwave, be charged for
the full amount owed and for issuance of an execution against
Microwave. Microwave had initially filed an answer admitting
that it was holding approximately $28,000 for the benefit of
Whitney-Pehl. By leave of court, Microwave filed a late
amended answer disputing whether Microwave owed any sums
to Whitney-Pehl because of Whitney-Pehl's alleged breach of
the construction contract. In various documents submitted to
the court, Microwave, referring to a specific case pending in

---

[2] The presence in the case of the individual defendants has no significance
with regard to any of the issues raised.

Superior Court, asserted that there was "pending litigation" over the sums it owned to Whitney-Pehl and "claims" against both Coviello and Whitney-Pehl. The trial judge in his review of the pleadings in the case to which Microwave made reference found that these assertions by Microwave were material and untrue. He also found that they were made knowingly and wilfully.[3]

No evidentiary hearing was held on the merits of Microwave's claim of a breach of contract by Whitney-Pehl. Because the judge found the trustee to have knowingly and wilfully misrepresented a material fact, that claims were actually pending, he concluded that G. L. c. 246, § 19, as amended by St. 1973, c. 1114, § 266, applied. That section provides as follows: "If a person summoned as trustee . . . knowingly and willfully swears falsely in his answer . . . , he shall be liable to the plaintiff in the trustee process . . . for the full amount due on the judgment recovered therein, with interest, to be paid out of his own goods and estate."[4] Judgment entered, accordingly, charging Microwave as trustee of funds due Coviello in the amount of $20,050.25, together with interest and costs. Microwave appealed. Coviello, not Whitney-Pehl, appeared as appellee. Findings of fact and conclusions of law of the trial judge were filed on April 11, 1986, at the request of the Appeals Court panel, and a summary order affirming the judgment was entered on April 24, 1986. *Chris Coviello & Sons* v. *Microwave Antenna Syss. & Technology, Inc.*, 22 Mass. App. Ct. 1103 (1986). In view of the affirmance we take the fact of a knowing and wilful misrepresentation as established.

b. *The arbitration.* On April 18, 1985, Microwave submitted its breach of contract dispute with Whitney-Pehl to arbitration. Whitney-Pehl brought a cross claim against Microwave for amounts allegedly due it under the contract. Relying on the

---

[3] The record before us, in our view, is an insufficient basis for the intimation that counsel for Microwave acted unethically. We, therefore, view the situation with less gravity than the author of the concurring opinion.

[4] Until G. L. c. 246, § 19, was amended by St. 1973, c. 1114, § 266, the words "in tort" followed the words "liable."

preclusive effect of the Superior Court judgment, Whitney-Pehl sought, unsuccessfully, to have the arbitrator rule in its favor in at least the amount Microwave, as trustee, had been ordered to pay Coviello. After a four-day hearing on the merits of the breach of contract dispute, the arbitrator issued the award in favor of Microwave.

c. *The second lawsuit.* Microwave sought confirmation of the award in the Superior Court, and Whitney-Pehl sought to have the award vacated. Fortuitously, the Superior Court judge who had presided over the earlier litigation in its entirety heard the second case. After a nonevidentiary hearing, he allowed Whitney-Pehl's application to vacate the arbitration award and dismissed Microwave's complaint for confirmation of the award.

2. *The Applicability of Issue Preclusion Principles Generally.*

We first address the question whether issue preclusion principles are applicable to arbitration proceedings. Without citing any specific authority, Microwave urges that we accept the general proposition that the judicial doctrine of issue preclusion has no application to arbitration proceedings. We decline to accept that broad proposition. The only case cited to us which is directly on point, *Universal Underwriters Ins. Co.* v. *Shuff*, 67 Ohio St. 2d 172 (1981), holds to the contrary. See also *Danvers* v. *Wexler Constr. Co.*, 12 Mass. App. Ct. 160, 167 (1981); *C & O Dev. Co.* v. *American Arbitration Assn.*, 48 N.C. App. 548 (1980). Microwave relies generally on the consistent recognition by our courts that statutes dealing with arbitration "express a strong public policy favoring arbitration as an expeditious alternative to litigation for settling commercial disputes." *Danvers* v. *Wexler Constr. Co.*, at 163. Policy considerations at least as strong, however, underlie the principles of issue preclusion. By avoiding relitigation of matters the parties have previously litigated, collateral estoppel principles serve to "protect[ ] . . . adversaries from the expense and vexation attending multiple lawsuits, conserve[ ] judicial resources, and foster[ ] reliance on judicial action by minimizing the possibility of inconsistent decisions. . . ." *Fidler* v. *E.M.*

*Parker Co.*, 394 Mass. 534, 539-540 (1985). In light of these goals, the fact that a subsequent adjudication may take place before a forum of a different character should not, we think, circumscribe the application of issue preclusion principles. In any event, it is not necessary for us to choose between the two policies, the one underlying issue preclusion and the other favoring arbitration, because, as a practical matter, the statutory law of this Commonwealth accommodates both. Under G. L. c. 251, § 2 (*d*), a party to any suit involving an arbitrable dispute is entitled to request and ordinarily to receive from the court a stay pending arbitration. See *Danvers* v. *Wexler Constr. Co.*, 12 Mass. App. Ct. at 164-165. Thus, any adjudication of an otherwise arbitrable dispute by a court would occur only as a result of the parties' free choice, and waiver principles would prevent those parties from seeking a subsequent arbitration of the same dispute. See *Tumim* v. *Palefsky*, 7 Mass. App. Ct. 847 (1979); *Hanslin Builders, Inc.* v. *Britt Dev. Corp.*, 15 Mass. App. Ct. 319, 321 (1983).

3. *The Applicability of Issue Preclusion to the Facts of this Case.*

Assuming that an arbitration may be a nullity because of prior litigation, we proceed to examine the relationship between the first lawsuit and the arbitration. "Under the doctrine of issue preclusion, ' [w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties whether on the same or a different claim.' Restatement (Second) of Judgments § 27 (1982). See *Foster* v. *Evans*, 384 Mass. 687, 694-696 (1981)." *Cousineau* v. *Laramee*, 388 Mass. 859, 863 n.4 (1983). The issue before the arbitrator, relating to the cross claims for breach of contract between Microwave and Whitney-Pehl, was neither actually litigated in the first lawsuit nor essential to the judgment. The basis for the decision resulting in the requirement that Microwave pay Coviello the full amount of Coviello's claim against Whitney-Pehl out of Microwave's own funds was the knowing and wilful misrepresentation made on behalf of Microwave which made G. L. c. 246, § 19, directly

applicable. That payment was due Coviello from Microwave had nothing to do with the merits of any dispute between Microwave and Whitney-Pehl. By virtue of the final judgment in the first case, Microwave, as a form of penalty for its false statement, remains liable to Coviello for $20,050.25 plus interest and costs, if that payment has not yet been made. The arbitration award takes nothing away from Whitney-Pehl that it had gained as a result of the first case.

The first case was decided, properly according to this court, before it proceeded to the trial stage. Had the case proceeded further, barring a stay pending arbitration, Microwave would have had the right to a resolution in that proceeding by a judge or jury of the merits of the breach of contract dispute with Whitney-Pehl. G. L. c. 246, § 17. Because, as a result of Microwave's own acts, the proceeding was terminated at a preliminary stage, Microwave had no real opportunity to present the breach of contract issue in the first lawsuit. In sum, then, in no real sense were the parties to the arbitration relitigating the issue which was decided in the first Superior Court case. Because the court did not address the merits of the contract claims between Microwave and Whitney-Pehl, the principles of issue preclusion do not apply. See *Air Purchases, Inc.* v. *Mechanical Coordinators, Corp.*, 21 Mass. App. Ct. 632, 635 (1986). Both decisions, therefore, may be given full effect without any inconsistency.

We mention two factors which might tend to suggest a contrary result. First, in his findings in the first case, the judge stated that he was drawing the inference that Microwave was holding in its possession, as trustee, the sum of $28,000 on account of services performed by Whitney-Pehl and that those sums were "due absolutely and without contingency" (G. L. c. 246, § 32). That statement seems to suggest that the judge actually decided the merits of the issue subsequently arbitrated. The judge's conclusions of law, however, make clear that the decision was based exclusively on G. L. c. 246, § 19, and not the merits of Mircowave's breach of contract claim.

Second, Whitney-Pehl relies heavily on a statement made in Microwave's request for a stay of the appeal from the judg-

23 Mass. App. Ct. 25          31

Microwave Antenna Systems & Technology, Inc. *v.* Whitney-Pehl Construction Co.

ment in the first lawsuit. Microwave asserted that a stay was necessary "to avoid duplication, the possibility of conflicting or contradictory results and to promote the resolution of disputes which are the subject of arbitration." Whitney-Pehl contends that the assertion is an admission that the disputes were identical. So to regard the assertion would be unfair. No findings of fact or conclusions of law had been issued by the trial judge before the motion for a stay was filed, and the parties could not reasonably have been expected to know that G. L. c. 246, § 19, was the sole basis for the judge's decision.

We need not decide the final issue raised by Microwave, that Whitney-Pehl waived its right to object to confirmation of the award. See *Geller* v. *Temple B'Nai Abraham*, 11 Mass. App. Ct. 917, 919 (1981). We note with regard to the waiver contention, however, that Whitney-Pehl did not refuse to engage in arbitration; it did not seek judicial protection against being required to submit to arbitration; and it sought arbitration of its own breach of contract claim against Microwave.

The judgment appealed from is vacated, and a new judgment shall enter confirming the arbitration award.

*So ordered.*

BROWN, J. (concurring). While I am in full agreement with the majority opinion as it relates to the effect of issue preclusion, I wish to touch briefly on one aspect of the case.

As the majority opinion notes (*supra* at 26-27 and 29-30), the first lawsuit was decided by the trial judge (and correctly so) on the ground that the trustee had knowingly filed a false affidavit. The trustee was, of course, represented by counsel at the time the affidavit was filed; presumably, counsel also assisted in its preparation. Viewing the circumstances in the light most favorable to counsel, the affidavit was carelessly prepared. In his findings in the first lawsuit, however, the trial judge was considerably less kind.

Even if counsel did not learn of the factual misrepresentations until after the filing of the affidavit, counsel had an ethical

and moral obligation to bring the true state of affairs promptly to the attention of the court and the other litigants. This was not done. Furthermore, if the misrepresentation had not been made in the first place (or had it been promptly corrected), the trial judge would then have had the opportunity to decide the first lawsuit on its merits. Such a decision might have obviated the need for the second lawsuit, and, concomitantly, for this appeal.

A slip of the pen, or a slip of the lip, may unnecessarily cause dire consequences and undue hardships. Careful and competent preparation, whether it be of preliminary pleadings in a civil case or of closing argument in a criminal case, is vital to the integrity of the legal process. Integrity and trust are the cornerstones of our profession. Neither one is for sale. Continued respect for and confidence in our profession depend upon it.