Julie E. COLLINS; Robert
B. Ryan, Plaintiffs,

v.

D.R. HORTON, INC., Defendant.

No. CV–99–330–PHX–ROS.

United States District Court,
D. Arizona.

March 5, 2003.

Lawrence Allen Katz, Monica Linn Goebel, Steptoe & Johnson, LLP, Phoenix, AZ, for plaintiffs.

Lisa Marie Coulter, Lonnie J. Williams, Jr., Kristin Major Siciliano, Snell & Wilmer LLP, Phoenix, AZ, for defendant.

## ORDER

SILVER, District Judge.

Pending before the Court is Plaintiffs' Motion for Partial Reconsideration of the Court's March 29,2002 Order granting Defendant's Motion to Dismiss/Compel Arbitration. For the reasons stated below, the Court denies the Motion.

### Background

On February 29,1999, Plaintiffs, former employees of Defendant, filed a Complaint against Defendant alleging breach of contract, promissory estoppel, and fraud arising out of an employment agreement ("Agreement"). According to Plaintiffs, Defendant forced them to resign their positions and failed to pay them various sums allegedly owed under the terms of the Agreement. Although the Agreement includes a compulsory arbitration provision, on March 15, 1999, Defendant filed a timely response to Plaintiffs' claims. The parties then filed a Joint Proposed Case Management Plan, which provides, among other things, that "[a]ny Motion by Defendant directed at obtaining an Order to compel arbitration of Plaintiffs' claims must be filed by May 31,1999." (See 7/21/99 Sched. Order at 2)(adopting parties' stipulated dates).

Over the course of the next year, the litigation proceeded in accordance with the Scheduling Order. The parties engaged in extensive discovery, and on July 31, 2000, Defendant filed two motions for partial summary judgment. On August 2,2000, Plaintiffs also moved for partial summary judgment. While these motions were pending, Defendant filed a motion to consolidate this case with another case involving an employment agreement in which it is also the Defendant. *See Hickcox v. D.R. Horton, Inc.,* CIV–99–329–PHX–SRB. On March 30,2001, this Court denied the three motions for summary judgment. On July 2, 2001, Judge Susan R. Bolton denied the motion to consolidate.

Meanwhile, on May 14, 1999, Defendant moved in *Hickcox* to dismiss the plaintiff's claims and compel arbitration based on the parties' employment agreement. However, on May 27, 1999, the Ninth Circuit held that the Federal Arbitration Act ("FAA") does not apply to employment contracts. *Craft v. Campbell Soup Co.,* 177 F.3d 1083, 1093 (9th Cir.1998).[1] Accordingly, the

---

**1.** The Ninth Circuit's May 14,1999 Craft decision represented an amended version of its

*Hickcox* Court denied Defendant's Motion to Dismiss on the basis of craft and Arizona law, which rendered compulsory arbitration provisions in employment contracts unenforceable.

On March 21,2001, the Supreme Court issued its decision in *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234(2001). The Supreme Court held that, contrary to the Ninth Circuit's reasoning in Craft, the FAA does apply to employment contracts. Under *Circuit City*, otherwise valid compulsory arbitration provisions are now enforceable. On July 30,2001, Defendant filed a Motion with this Court to Dismiss/Compel Arbitration based on *Circuit City.* On March 29,2002, the Court granted this Motion. (Doc. # 219).

The day before the Court entered its Order compelling arbitration, on March 28,2002, a jury returned a verdict in favor of plaintiff Hickcox in the related case before Judge Bolton. On April 5,2002 judgement was entered in the *Hickcox* case for (1) $87,500.00 in damages on the breach of contract claim; (2) $87,000.00 in damages on the fraud claim; and (3) punitive damages of $4,100,000.00. On June 27,2002, Judge Bolton ordered remittitur of the punitive damage award to plaintiff Hickcox on the fraud claim from $4.1 million to $1.0 million.

On May 21, 2002, Plaintiff filed the present Motion for Partial Reconsideration/Modification of March 29,2002 Order. (Doc. # 220). Plaintiff argues that (1) since the Court rendered its decision newly discovered evidence requires reconsideration, and (2) the Court committed clear error in finding Plaintiffs' fraud claims subject to arbitration. Defendant filed its Response on October 25, 2002 (Doc.

# 226), and Plaintiff replied on November 15,2002 (Doc. # 227).

### Discussion

Jurisdiction exists pursuant to 28 U.S.C. 1332, diversity jurisdiction. Both parties agree that federal substantive law governs arbitrability, while Arizona substantive law applies to Plaintiffs' contract and fraud claims.

### A. Legal Standard

 The Court possesses discretion to reconsider and vacate its order granting dismissal. *See Barber v. Hawaii,* 42 F.3d 1185, 1198 (9th Cir.1994); *United States v. Nutri–cology, Inc.,* 982 F.2d 394, 396 (9th Cir.1992). Motions for Reconsideration are disfavored, however, and are not the place for parties to make new arguments not raised in their original briefs. *See Northwest Acceptance Corp. v. Lynnwood Equip., Inc.,* 841 F.2d 918, 925–26 (9th Cir.1988). Nor is it the time to ask the Court to rethink what it has already thought. *See United States v. Rezzonico,* 32 F.Supp.2d 1112, 1116 (D.Ariz.1998)(citing *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.,* 99 F.R.D. 99, 101 (E.D.Va. 1983)). Accordingly, courts grant such motions only in rare circumstances. *See Sullivan v. Faras–RLS Group, Ltd.,* 795 F.Supp. 305, 308–09 (D.Ariz.1992).

Because there was no trial, the Court will construe Plaintiffs Motion for Reconsideration as a motion to alter or amend judgment pursuant to Fed.R.Civ.P. 59(e) and for relief from judgment pursuant to Fed.R.Civ.P. 60(b).

 Any motion to alter or amend judgment pursuant to Rule 59(e) must "be filed no later than 10 days after entry of judgment." In addition, the motion must provide (1) a valid reason why the Court

---

earlier Craft decision issued December 2, 1998. *See Craft v. Campbell Soup Co.,* 161

F.3d 1199 (9th Cir.1998) *superseded by* 177 F.3d 1083 (9th Cir.1998).

should reconsider its prior decision, and (2) facts or law of a strong convincing nature to induce the Court to reverse its prior decision. *See, e.g., All Haw. Tours Corp. v. Polynesian Cultural Ctr.,* 116 F.R.D. 645, 648–49 (D.Haw.1987). The Court may grant such a motion if the Court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J. Multnomah County, Or. v. ACandS, Inc.,* 5 F.3d 1255,-1263 (9th Cir.1993), *cert. denied,* 512 U.S. 1236, 114 S.Ct. 2742, 129 L.Ed.2d 861 (1994) (citation and internal quotation marks omitted).

■ The Court may grant a motion for relief from judgment pursuant to Rule 60(b) only "upon a showing of (1) mistake, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud; (4) a void judgment; *(5)* a satisfied or discharged judgment; or *(6)* extraordinary circumstances which would justify relief." *Id.* at 1263; *see* Fed.R.Civ.P. 60(b); *Allmerica Fin. Life Ins. & Annuity Co. v. Llewellyn,* 139 F.3d 664, 666 (9th Cir.1997)(stating that party must show "extraordinary circumstances" to obtain relief under Rule 60(b)(6)).

## B. Analysis

Plaintiffs argue for reconsideration on two grounds: (1) clear error and (2) newly discovered evidence. The Court finds neither of Plaintiffs' arguments persuasive.

### 1. The Court Did Not Commit Clear Error in Finding Plaintiffs' Fraud Claims Arbitrable

■ Plaintiffs first ground for seeking modification consists of a claim that "the Court committed clear error when it compelled arbitration, under Plaintiffs' Employment Agreements, of their claims arising out of Defendant's separate and independent promise of 30,000 shares." (Reply p. 2) (Doc. # 227).

To support this assertion, Plaintiffs cite to Arizona state court cases and other non-Ninth Circuit cases where the courts found claims for torts not subject to arbitration clauses because they lacked a significant relationship with the parties' contract. *See, e.g., Dusold v. Porta–John Corp.,* 167 Ariz. 358, 362, 807 P.2d 526, 530 (Ariz.App. 1990); *Sutton v. Hollywood Entertainment Corn.,* 181 F.Supp.2d 504, 512 (D.Md. 2002); *Hersman, Inc. v. Fleming Companies, Inc.,* 19 F.Supp.2d 1282, 1287 (D.Ala. 1998); *Greenwood v. Sherfield,* 895 S.W.2d 169, 176 (Mo.Ct.App.1995); *Seifert v. U.S. Home Corp.,* 750 So.2d 633, 642–43 (Fla. 1999).

Moreover, Plaintiffs contend that the Court misplaced reliance on *Simula, Inc. v. Autoliv, Inc.,* 175 F.3d 716 (9th Cir. 1999), because that case involved an integration clause that fully incorporated prior agreements into a later agreement containing an arbitration clause. Here, Plaintiffs assert the prior agreement between Plaintiffs and D.R. Horton promising 30,-000 shares was never integrated into the later employment agreement containing an arbitration clause between Plaintiffs and Continental. Plaintiffs also argue that, unlike in *Simula,* Plaintiffs' claims concerning the promised 30,000 shares are not predicated on a misuse or violation of their later employment agreements.

■ The Court finds Plaintiffs' attempts to distinguish *Simula* and rely on non-controlling authority unpersuasive. Despite Defendant's reliance on several state court cases for "guidance," the Ninth Circuit establishes that "[f]ederal substantive law governs the question of arbitrability." *Simula,* 175 F.3d at 719. "Every court that has construed the phrase 'arising in connection with' in an arbitration clause has interpreted that language broadly." *Id.* at

721. "[T]he language 'arising in connection with' reaches every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract." *Id.* "To require arbitration, [Plaintiffs'] factual allegations need only 'touch maters' covered by the contract containing the arbitration clause and all doubts are to be resolved in favor of arbitrability." *Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 624 n.13, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)).

Here, Plaintiffs' factual allegations contained in their Complaint establish the requisite connection between Plaintiffs' claims related to the earlier promise of 30,000 shares with D.R. Horton and their later employment agreements with Continental. In Count Four, Plaintiffs allege that "DHI's promise of 30,000 shares was made directly to Collins and Ryan, as members of the group holding unvested CHHC options, in exchange for the commitment to support a merger with DHI and to remain with the new company for a period of time to stabilize the company." (Comp.¶ 69). In Count One, Plaintiffs allege:

> The Collins Employment Agreement was prepared concurrently with a merger agreement between CHHC and DHI, and in anticipation of a completed merger between those companies. The Agreement was intended to ensure a successful merger by inducing Collins, one of CHHC's top officers, to support the merger, to stay on with CHHC during the turbulent period preceding the merger, and to stay on with the merged company[.]

(Id.¶ 18); (*see also* Comp. ¶ 40 (containing parallel allegations regarding Ryan's Agreement); Comp. 720 (stating that D.R. Horton and Continental both participated in the drafting of the Collins' employment agreement with "the understanding that [D.R. Horton] would succeed to [Continental's] interests and obligations thereunder" and that "[n]egotiations of the merger agreement ... occurred concurrently with the negotiation the Collins Employment Agreement"); Comp. ¶ 42 (containing parallel allegations regarding Ryan's Agreement)).

Taken together, these allegations establish that a connection exists between the Plaintiff–Continental Agreement and the alleged promises by D.R. Horton to Plaintiffs regarding the 30,000 shares. Both the Agreement and the promises regarding the shares were made to facilitate the planned merger and to secure Plaintiffs' loyalty to the merged company. Accordingly, the Court's decision that Counts Four, Five, and Six, all of which pertain to the 30,000 shares, possess a "significant relationship" to the Agreement, and consequently subject to the Agreement's arbitration provision, fails to constitute clear error.

**2. The April 5,2002 *Hickcox* Judgment, While Constituting New Evidence, Fails to Require the Court to Modify its Previous Order**

■ Plaintiffs' second ground for seeking modification involves newly discovered evidence, the April 5,2002 *Hickcox* Judgment. This Court must decide a matter of first impression in the Ninth Circuit: whether the collateral estoppel effect of a court-rendered judgment is to be determined by a court in a subsequent action, or by arbitrators. Plaintiffs assert that because a Federal District Court Judge rendered this Judgment, only a Federal Court may decide its collateral estoppel effects. The Court rejects this argument.

Plaintiffs claim that because numerous other courts adopt the view that the *res judicata* effects of a prior court ruling

should be decided by a judge, rather than an arbitrator, the Court must hold that the *collateral estoppel* effects of Judge Bolton's ruling should be decided by this Court. According to Plaintiffs, public policy mandates that courts rule on both claim and issue preclusion of prior court judgments because courts possess inherent power to defend their own judgments. Otherwise, the finality and integrity of judgments might be compromised because parties may, via use of arbitrators, be able to ignore previous federal court decisions that conclusively settled the same claims or issues. Furthermore, Plaintiffs argue that public policy prohibits parties from contracting around court judgments, because these judgments are not creatures of contract. Concomitantly, in contrast, arbitrators should only decide the claim and issue preclusion of prior arbitration awards, even when those awards are confined by courts, because these judgments are creatures of contract.

a. Review of Other Courts' Case Law

Plaintiffs cite to other courts' cases asserting that they hold that the collateral estoppel preclusive effect of curtailments is a matter solely for future courts to act upon. *John Hancock Mut. Life Ins. Co. v. Olick,* 151 F.3d 132, 139 (3d Cir.1998); *Miller v. Runyon,* 77 F.3d 189, 193 (7th Cir.1996); *In re Y & A Group Sec. Litigation,* 38 F.3d 380, 383 (8th Cir.1994); *Kelly v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 985 F.2d 1067, 1069 (11th Cir.1993); *Miller Brewing Co. v. Fort Worth Distrib.*

*Co.* 781 F.2d 494, 498–99 (5th Cir.1986).[2] However, careful review of these cases establishes that, while at times the courts refer to preclusion generally, the courts' holdings apply to the res judicata effects of prior court Judgments, not collateral estoppel effects. Moreover, some of the holdings of these opinions have since been limited or never actually held the opinions that Plaintiffs purport.

In *John Hancock Mut. Life Ins. Co.,* the Third Circuit stated is holding narrowly: "We conclude that a decent respect for a precedent of this court dictates that we resolve the issue in favor of district court jurisdiction to decide the *res* judicata defense as it relates to a prior judgment." 151 F.3d at 138 (emphasis added). Moreover, explaining the rational for its holding, the court noted that public policy required the court to decide res judicata in order to prevent parties from " 're-assert[ing] *claims* ' " previously resolved. *Id.* (quoting *Kelly,* 985 F.2d at 1069)(emphasis added).

Judge Posner's opinion in *Miller,* 77 F.3d 189, contrary to Plaintiffs assertion, fails to hold that preclusive effect of all court judgments is a matter solely for future courts. Instead, Judge Posner provides, in dicta, thoughtful analysis of the issue. *Id.* at 193–94. After collecting most of the cases addressing who decides the preclusion effect of prior court judgments, Judge Posner noted that "[t]he cases are few, but all but one support the [court deciding], though the majority of

---

**2.** Plaintiffs also cite to several state court cases to support their position. However, these courts did not interpret the Federal Arbitration Act's strong pro-arbitration policy. Therefore, the Court does not give significant persuasive effect to the rationale relied on by these courts. *See Leon C. Baker, P.C. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 821 So.2d 158, 163–64(Ala.2001); *C & O Dev. Co. v. American Arbitration Ass'n,* 269 S.E.2d 685,

687 (N.C.App.1980);*see also Microwave Antenna Sys. & Tech., Inc. v. Whitney–Pehl Construction Co., Inc.,* 23 Mass.App. 25, 498 N.E.2d 1059 (1986); *Universal Underwriters Ins. Co. v. Shuff,* 67 Ohio St.2d 172,67 Ohio St.2d 172, 423 N.E.2d 417 (1981); *In re HRH Construction Corp.,* 45 N.Y.2d 675,45 N.Y.2d 675, 412 N.Y.S.2d 366, 384 N.E.2d 1289 (1978).

these involve res judicata in the sense of claim preclusion, rather than collateral estoppel (issue preclusion), **and that may make a difference.**" *Id.* at 193 (emphasis added). He goes on to further explain:

> But a distinction must be made between res judicata and collateral estoppel. The former precludes entire claims the latter the relitigation of specific issues. When all that a party is seeking is not to bar but merely to constrain the arbitrator, he may not (or may—we cannot find a case) be able to obtain injunctive or other judicial relief in advance of the arbitration—relief designed to narrow the issues that the arbitrator may consider—and so may have to take his chances on persuading the arbitrator to apply collateral estoppel.

*Id.* at 194.

Two of the three judges on the Eighth Circuit panel that decided *In re Y & A Group*, 38 F.3d 380, held that a district court may defend their judgments as *res judicata* by enjoining or staying arbitration. These judges cited to the public policy rationale relied on by the Third Circuit and enjoined an arbitration based on their interpretation of a settlement agreement incorporated by a district court into its final judgment in a previous action. *Id.* at 382–83. The Court, while noting the limited nature of the district court's review of the settlement agreement it incorporated into its final judgment, did not deem this limited nature of review sufficient to warrant allowing an arbitrator to determine the res judicata effects.[3] *Id.* In a concurrence, Judge Arnold noted that the final judgment entered by the district court specifically allowed for federal courts, not arbitrators, to decide the future res judicata or collateral estoppel effects of the settlement agreement incorporated in the order. *Id.* at 384. Therefore, Judge Arnold explained, "I do not read this Court's opinion today to hold generally that courts may, by injunction, control the decision of arbitrators on questions of issue or claim preclusion." *Id.*

Next, Plaintiffs rely on *Kelly*, 985 F.2d 1067. In this case, the Eleventh Circuit decided that district courts could enjoin arbitration based on the *res judicata* effects of prior court judgments. *Id.* at 1069. The court relied on the All Writs Act for the authority to issue the injunction and explained that public policy dictated that courts "should not have to stand by while parties re-assert *claims* that have already been resolved." *Id.* (emphasis added). In a more recent case, *Weaver v. Florida Power & Light Co.*, 172 F.3d 771 (11th Cir.1999), the Eleventh Circuit limited *Kelly*, explaining that it:

> addressed only the question whether the Federal Arbitration Act ... completely forbids a district court from enjoining an arbitration proceeding on res judicata grounds. It did not address the question whether, in a given case, the requirement that the remedy at law be inadequate might prevent a district court from granting equitable relief.

*Id.* at 775 n. 10. Therefore, the *Weaver* court reversed the district court's injunction of an arbitration because of res judicata effects from a prior court judgment, stating that an adequate remedy at law existed raising the issue of res judicata "in the arbitration proceeding and, if its argu-

**3.** The Court notes that the Ninth Circuit recently recognized a distinction between the limited nature of review of a court confirmed arbitration award versus a regular court judgment as a grounds for allowing the preclusive effects of such confirmed judgments to be decided by arbitrators instead of the courts.

*Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126 (9th Cir.2000). Considering the similarity of the scope of court review when confirming either settlement agreements or arbitration awards, it appears likely the Ninth Circuit would not adopt the rationale of the *In re Y & A Group* majority.

ments are valid, hav[ing] the arbitration dismissed." *Id.* at 773. The court noted that, if the arbitrator ignored the res judicata defense, then the federal courts could "vacate the arbitration award (or refuse to enforce it) based on the arbitrators' 'manifest disregard' of the law." *Id.* at 775 n. 9 (quoting *Montes v. Shearson Lehman Bros., Inc.,* 128 F.3d 1456, 1461 (11th Cir. 1997)). Consequently, it appears that the Eleventh Circuit now actually endorses the right of arbitrators to first decide the res judicata effects of prior court judgments. *See also Aircraft Braking Sys. Corp. v. Local 856,* 97 F.3d 155, 159 (6th Cir.1996)("Arbitrators are not free to ignore the preclusive effect of prior judgments under the doctrines of res judicata and collateral estoppel, although they generally are entitled to determine in the first instance whether to give the prior judicial determination preclusive effect."); *American Train Dispatchers Association v. Burlington Northern Railroad Co.,* 784 F.Supp. 899, 902–03 (D.D.C.1992)(citing to the "plenary" right of courts to protect their judgments for authority to rule on collateral estoppel effects of prior judicial judgment *after* arbitration panel ruled, in the court's opinion incorrectly, on the same issue).

Finally, Plaintiffs cite to *Miller Brewing Co.,* 781 F.2d 494, where the Fifth Circuit held that the party seeking to arbitrate waived that right. *Id.* at 498. However, the court went on to note, in dicta, that even if waiver did not apply, the court could enjoin arbitration based on the res judicata effects of a prior court judgment. *Id.* at 498–500. At no time did the court discuss whether law requires that the court, rather than the arbitrator, should determine the res judicata effects, instead, it just assumed that the court possessed this power.

Having addressed the cases cited by Plaintiffs, the Court now turns to Defendant's reliance on *United States Fire Ins.* *Co. v. National Gypsum Co.,* 101 F.3d 813 (2d Cir.1996). Unlike Plaintiffs' reliance on res judicata cases, Defendant cites to where the Second Circuit held that the **collateral estoppel** preclusive effect of court judgments may be decided by arbitrators. *Id.* at 817. The parties contracted to arbitrate "any disputed issues." *Id.* at 815. The Second Circuit first cited to the strong presumption of arbitrability mandated by the Federal Arbitration Act. *Id.* Then, it noted that issue preclusion was not "so obscure a question that doubt is cast upon whether. the parties intended that it be subject to arbitration." *Id.* at 817. Furthermore, it noted that issue preclusion, as a legal defense, constituted nothing more then a component of the dispute on the merits, a dispute the parties, via their broad arbitration agreement, agreed to arbitrate. *Id.* Therefore, the court reasoned, if the parties so contract, the. collateral estoppel effects of prior court judgments may be decided by arbitrators.

b. Review of Ninth Circuit Case Law

As previously stated, no Ninth Circuit rulings directly address whether courts or arbitrators decide collateral estoppel effects of court-rendered judgments. However, the parties cite to two Ninth Circuit opinions to assist the Court in determining the Ninth Circuit's likely holding on this issue.

First, Defendant cites to *Local Union No. 370 v. Morrison–Knudsen Co.,* 786 F.2d 1356 (9th Cir.1986). In this case, the parties contracted to arbitrate their disputes. However, a prior court suit, in which the plaintiff was not a party, ended in a **settlement agreement.** The defendant argued that the district court possessed jurisdiction to enjoin arbitration based on the preclusive effects of the settlement agreement. *Id.* at 1357–58. The

Ninth Circuit rejected this argument, finding that their:

> inquiry ends upon the determination that the dispute is subject to arbitration. "Once it is determined...that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator.'" ... Even matters that are "extrinsic" to the process of interpreting the ... agreement, such as defenses of collateral estoppel and equitable estoppel, are subject to arbitration.

*Id.* at 1358 (quoting *John Wiley and Sons v. Livingston*, 376 U.S. 543, 557 (1964)) Plaintiffs accurately point out that this case fails to involve the existence of a prior court judgment. Therefore, the Ninth Circuit never considered the public policy rationale for allowing courts to determine the preclusive effect of prior court judgments relied on by Plaintiffs in their Motion to Reconsider.

However, the next case, which both parties cite to, *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126 (9th Cir.2000), does address the public policy rationale relied on by Plaintiffs. In *Chiron*, the Ninth Circuit addressed who should decide the *res judicata* effects of a prior arbitration award. The plaintiff argued that because a federal district court confirmed the arbitration award, a court judgment existed. Then, relying on the same public policy rationale of other circuits, asserted that only the federal courts could determine the res judicata effects of that judgment *Id.* at 1132.

Judge McKeown provided a detailed and thoughtful analysis of this argument before rejecting it. First, she cited to the Federal Arbitration Act's requirement to favor arbitration. *Id.* at 1131. Then she noted that the "simplest answer ... is to look once again at the parties' agreement, which requires arbitration of 'any dispute.' Nowhere is the defense of res judicata treated differently or singled out for exclusion." *Id.* at 1132. Next, she cited with approval the Second Circuit's reasoning in *National Union Fire Ins. Co. v. Belco Petroleum Corp.*, 88 F.3d 129 (2d Cir. 1996), a case published just four months before *United States Fire Ins. Co.*, and relied on by that court when rendering its decision that arbitrators could decide the collateral estoppel effects of prior court judgments. *Id.* at 1133. Finally, Judge McKeown rejected the plaintiffs argument that a confirmed judgment of an arbitration award should be subject to the same public policy exception relied on by other circuits when they held that courts could decide the res judicata effects of prior court judgments. Judge McKeown determined that ***even if this public policy exception applied*** in the Ninth Circuit, plaintiffs reliance on it would be misplaced as a distinction exists between prior court judgments and court confirmed judgments of arbitration awards. *Id.* at 1133–34; *see also Miller*, 77 F.3d at 193–94 (implicitly agreeing with distinction). Most importantly, after explaining the rationale behind the public policy exception, she noted that the other circuits' cases creating the exception failed to "take into consideration the FAA's policy limiting the role of the court once arbitrability is determined." *Id.* 1134. Therefore, it appears that the Ninth Circuit actually finds the validity of the public policy exception favoring courts retaining jurisdiction to enforce court judgments based on the doctrine of res judicata questionable.

### c. Collateral Estoppel is an Issue for the Arbitrator

Having reviewed the published cases, the Court now must determine if the Ninth Circuit endorses a public policy exception requiring courts, rather than arbitrators,

to decide the collateral estoppel effects of prior court judgments. The Court finds nothing to indicate that the Ninth Circuit would so hold.

First, the only Ninth Circuit case to recognize the existence of such an exception directly questions the wisdom of it, noting that the Federal Arbitration Act limits the role of courts once arbitrability is determined. *Id.* Thereby suggesting that the Ninth Circuit's inclination would be to reject such an exception and allow arbitrators to decide not only the collateral estoppel, but also the res judicata, effects of prior court judgments.

Second, the case law relied on by Plaintiffs to support their position is limited to holding that **res judicata** effects of prior court judgments should be determined by courts. The only court to address which forum decides the **collateral estoppel** effects of prior court judgments ruled that the arbitrator should make that decision. *United States Fire Ins. Co.,* 101 F.3d 813. It appears universally recognized that, for good reasons, distinctions may exist between res judicata and collateral estoppel. *See, e.g., Miller,* 77 F.3d at 193–94.

For example, two of the rationales for the Federal Arbitration Act's endorsement of arbitration as an alternative to litigation is the speed of resolution and lowering costs. *Scherk v. Alberto–Culver Co.,* 417 U.S. 506, 510–11, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974)(citing to Congressional Records); *Jope v. Bear Stearns & Co.,* 632 F.Supp. 140, 144(N.D.Cal.1985). If a court is asked to resolve the res judicata effect of a prior court judgment efficient resolution of litigation is served if the court immediately issues the decision disposing of the case, rather than passing it to an arbitrator to issue the same ruling requiring later confirmation by the court.

Moreover, the public policy rationale for protecting prior court judgments is stronger when dealing with res judicata than collateral estoppel. Directly contradictory rulings on a claim severely undermine confidence in a federal court judgment on the same claim, as well as render the original judgment nothing more then an advisory opinion that is inimical to the Constitution. 13 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3529.1 (2d Ed.1984). However, a contrary ruling in arbitration on a previously litigated issue does not dispense with the judgment on the claim. Only the collateral effect of one of the many issues related to the claim is foreclosed or called into question.

Therefore, even if the Ninth Circuit adopted the view of other circuits that courts should decide the res judicata effects of prior court judgments, it is unlikely it would broaden this principle to also apply to collateral estoppel. *Chiron,* 207 F.3d at 1134.

Accordingly,

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Reconsideration is **DENIED**.