38 F.3d 380
 Fed. Sec. L. Rep. P 98,429
In re Y & A GROUP SECURITIES LITIGATION.
Don EWART; Edwin Handley, Sr.; Dolly Rowe; William R.
Hershey; Forrest L. Sayer; Donald J. Sengstaken,
Plaintiffs,
Dean Witter Reynolds, Inc.; Nancy A. Nail; Michael R.
Vandiver, Intervenors/Appellees,
Smith, Barney, Shearson, Inc.; Larry McKenney, Intervenors,
v.
Y & A GROUP, INC.; Malcolm Cheek; Stephen C. Spencer; D.
Ralph Young; J. Michael Bodnar; Carl R. Lovitt;
Robert W. Zak, Jr.; James P. Rose, Defendants,
Neil A. Valk, Objector/Appellant.
 No. 93-3950.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 15, 1994.
Decided Oct. 21, 1994.
Rehearing and Suggestion for Rehearing
En Banc Denied Dec. 28, 1994.
 
 Richard S. Arnold, Chief Judge, concurred in judgment.
 Kalju Nekvasil, Safety Harbor, FL, argued, for appellant.
 Gregory J. Kelly, Orlando, FL, argued (Robert B. Nadeau, Gregory J. Kelly and Nancy A. Nail, on the brief), for appellee.
 Before RICHARD S. ARNOLD, Chief Judge, WOLLMAN and BEAM, Circuit Judges.
 WOLLMAN, Circuit Judge.
 
 
 1
 Neil A. Valk appeals the district court's[1] order preliminarily enjoining Valk's arbitration action against Dean Witter Reynolds, Inc., et al. (Dean Witter). The court held that an earlier federal consent judgment is likely to have precluded Valk's arbitration claim against Dean Witter. We affirm.
 
 
 2
 * Valk, an investor in Y & A Group, Inc. stock, became plaintiff in a 1991 shareholder class action against Y & A which alleged that false financial and other public statements by Y & A inflated the value of the stock. As usual in such situations, the Ponzi scheme had come to light, the company mastermind absconded, and the stock tumbled.
 
 
 3
 In April 1993, the district court entered a final judgment incorporating a negotiated settlement of these fraud-on-the-market claims against Y & A. (Dean Witter was not a defendant in the case.) As will be seen, the scope of this consent judgment--and specifically whether Valk's claims against Dean Witter were released thereby--lies at the heart of this appeal.
 
 
 4
 In 1992, Valk started an arbitration action against Dean Witter, alleging damages resulting from his purchase of Y & A stock through Dean Witter. (Y & A was not a party to the arbitration case.) While all the damages sought in the arbitration apparently stemmed from Y & A stock losses, Valk's arbitration claims in no way concerned the fraud-on-the-market charges that were settled in the federal litigation between Y & A and the shareholders; rather, the claims went to bad acts by Dean Witter alone, which affected only Valk. For example, one of Valk's claims against Dean Witter alleges that the broker forged his signature on a margin agreement well before the period covered by the class settlement.
 
 
 5
 In August 1993, the arbitration panel denied Dean Witter's motion to dismiss the arbitration action as precluded by the class action judgment of April 1993.
 
 
 6
 Dean Witter did not wait for the arbitration to come to a final decision on the merits, moving instead to intervene in the district court class action and for a preliminary injunction against the arbitration. It is from the order granting the preliminary injunction that Valk appeals.
 
 II
 
 7
 Valk makes a superficially appealing argument that the district court did not have the power to enjoin the arbitration. Valk points out that under the Federal Arbitration Act (FAA), 9 U.S.C. Secs. 1-16, there are only a few situations under which an arbitration may be subject to an interlocutory appeal in federal court. Those limited situations include corruption, fraud, or bias in the arbitration proceeding. 9 U.S.C. Sec. 10. Thus, the usual rule is that under the FAA no appeal can be taken to the district court until a final decision is rendered. E.g. Cox v. Piper, Jaffray & Hopwood, Inc., 848 F.2d 842, 843-44 (8th Cir.1988). Here, Valk argues, the district court enjoined an ongoing arbitration, an act for which it had no authority under the FAA.
 
 
 8
 One problem with Valk's argument is that it turns the purpose of the FAA on its head. That purpose is the "speedy disposition of disputes without the expense and delay of extended court proceedings." Aerojet-General Corp. v. American Arbitration Ass'n, 478 F.2d 248, 251 (9th Cir.1973). It is this fear of needlessly prolonging disputes which has made courts reluctant to stay or enjoin ongoing arbitrations in favor of court proceedings. This concern is unwarranted here, however, for, in a twist, the court proceedings were completed first, resulting in a final judgment. See John Morrell & Co. v. Local Union 304A, 913 F.2d 544, 562 (8th Cir.1990) (citing to other instances where court proceedings concluded before arbitration did), cert. denied, 500 U.S. 905, 111 S.Ct. 1683, 114 L.Ed.2d 78 (1991). It is important to distinguish cases like this from more usual ones, in which arbitration is the quickest route to resolution. E.g., Peabody Coalsales Co. v. Tampa Electric Co., 36 F.3d 46 (8th Cir.1994); Merrill Lynch, Pierce, Fenner & Smith v. Hovey, 726 F.2d 1286 (8th Cir.1984). If Valk had his way, the litigation of his claims would be needlessly prolonged by arbitration.
 
 
 9
 A related hurdle that Valk cannot overcome is that even when arbitration is involved, federal "[c]ourts should not have to stand by while parties re-assert claims that have already been resolved." Kelly v. Merrill Lynch, Pierce, Fenner & Smith, 985 F.2d 1067, 1069 (11th Cir.), cert. denied, --- U.S. ----, 114 S.Ct. 600, 126 L.Ed.2d 565 (1993). No matter what, courts have the power to defend their judgments as res judicata, including the power to enjoin or stay subsequent arbitrations. Id.; Miller Brewing Co. v. Ft. Worth Distributing Co., 781 F.2d 494 (5th Cir.1986).
 
 
 10
 We conclude that the reasoning of Kelly and Miller Brewing is dispositive of the issue of the district court's power. But we find further indirect support for that power. The Supreme Court has held that where 1) Congress intends a statute "to be judicially enforceable" and where 2) a court concludes "that arbitration could not provide an adequate substitute for judicial proceedings in adjudicating claims under" that statute, prior arbitration cannot block court actions. McDonald v. City of West Branch, Mich., 466 U.S. 284, 289, 104 S.Ct. 1799, 1802, 80 L.Ed.2d 302 (1984) (unappealed arbitration decision insufficient to preclude Sec. 1983 action). See also Barrentine v. Arkansas-Best Freight System, Inc., 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) (voluntary submission of wage dispute to arbitration does not bar subsequent court adjudication); Alexander v. Gardner-Denver Co., 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) (submission of race discrimination claim to arbitration no bar to court adjudication).
 
 
 11
 If the civil rights statutes at issue in McDonald, Barrentine and Alexander are judicially enforceable, the All Writs Act, 28 U.S.C. Sec. 1651, a statute granting broad injunctive power to Article III judges in cases where jurisdiction exists, also qualifies. Much as the civil rights laws in the cited cases confer rights on certain citizens, the All Writs Act indirectly confers on injunction beneficiaries the right to judicial enforcement. Further, this case meets the second prong of the McDonald test, since no other forum provides an adequate substitute for a court's action in protection of its own judgment. See John Morrell, 913 F.2d at 559-64; Kelly, 985 F.2d at 1069; Miller Brewing, 781 F.2d at 496, 501. The All Writs Act makes plain that each federal court is the sole arbiter of how to protect its own judgments: federal courts "may issue all writs necessary ... in aid of their respective jurisdictions...." 28 U.S.C. Sec. 1651(a). It is this concept that underlies the related rule that the court which issues an injunction is the only one with authority to enforce it. Klett v. Pim, 965 F.2d 587, 590-91 (8th Cir.1992).
 
 
 12
 Valk is thus incorrect in arguing that the district court is precluded from reconsidering the arbitration panel's denial of Dean Witter's motion to dismiss. After all, this denial is based on the panel's interpretation of the settlement agreement incorporated in the district court's final judgment. The district court, and not the arbitration panel, is the best interpreter of its own judgment.
 
 
 13
 For these reasons, we hold that the district court had the power to grant the motion for an injunction against the arbitration.
 
 III
 
 14
 We turn to the question whether the entry of a preliminary injunction was proper in this case. A preliminary injunction will only be issued where it appears that the petitioner is likely to succeed on the merits in proving that a permanent injunction is warranted. See Dataphase Systems, Inc. v. C.L. Systems, Inc., 640 F.2d 109, 113 (8th Cir.1981). In this case, the answer turns on whether the consent judgment below in all likelihood gave Dean Witter the protection it claims.
 
 
 15
 Because of the contractual origins of consent judgments, the intent of the settling parties controls. 18 CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE, Sec. 4443 at 381-85 (1981). Where contract language is unambiguous, the district court's interpretation is reviewed de novo. Case Int'l Co. v. T.L. James and Co., Inc., 907 F.2d 65, 66 (8th Cir.1990). But where the contract language is ambiguous, the intent of the parties will be a factual finding reviewed only for clear error. Id. at 66-67.
 
 
 16
 Dean Witter was not a defendant in the class action, nor did it make any contribution to the settlement. Nevertheless, the district court found that the parties to the consent judgment intended Dean Witter to be protected from claims like Valk's.
 
 
 17
 This finding stems from the court's interpretation of the following part of the consent judgment:
 
 
 18
 All members of the Settlement class [including Valk] ... release ... the Defendants [i.e. Y & A] ... and all other actual and potential defendants ... from any ... claims ... whatsoever ... in any way related to, their purchases ... of Y & A securities ... which could have been ... complained of in the Action ... or could have been brought in any other forum[.]
 
 
 19
 Final Judgment at 4-5.
 
 
 20
 The district court found that Dean Witter was such a "potential defendant" in the class action, a finding disputed by Valk. The court then turned to the four-factor test that determines whether a preliminary injunction should issue. See Dataphase, 640 F.2d at 113. Aside from the issue of whether Dean Witter is a "potential defendant" under the judgment, the only part of the district court's Dataphase analysis that Valk complains of is the determination that Dean Witter was likely to succeed in showing a realistic identity of issues between the claims settled in the class action and the ones urged in the arbitration. See TBK Partners, Ltd. v. Western Union Corp., 675 F.2d 456, 461 (2nd Cir.1982) (holding a "realistic identity of issues" to be a prerequisite for preclusion).
 
 
 21
 We note that the issue of Dean Witter's "potential defendant" status is a merits question properly part of the Dataphase inquiry. To the extent the district court made the potential defendant inquiry preliminary to the Dataphase analysis, it was incorrect to do so. In order to receive preclusive cover from the consent judgment, Dean Witter must show that 1) there was a realistic identity of claims litigated in the class action and the arbitration; and 2) the parties to the consent judgment intended to cover noncontributing third parties like Dean Witter. To qualify for the preliminary injunction at issue here, Dean Witter must show a likelihood that it will prevail on these two issues.
 
 
 22
 The district court found that Dean Witter was likely to prove a realistic identity of issues. (We again take the forgery as representative of all Valk's arbitration claims.) The district court found that although the forgery occurred before the period covered by the settlement judgment, all of the damages Valk alleges from the forgery stemmed from losses on Y & A stock, all of which Valk purchased during the settlement period. The district court concluded that since its judgment precludes new complaints "in any way related to" the purchase of Y & A stock, the forgery claim most likely presents an issue realistically identical to those intended to be resolved by the settlement judgment. Id. We will not disturb this conclusion.
 
 
 23
 A closer issue is presented by the district court's finding that the parties to the consent judgment intended to release as "potential defendants" third parties who had not contributed to the settlement. When asked at oral argument to cite cases in which third parties have been protected by consent judgments, Dean Witter's counsel, acknowledging that such cases are difficult to find, referred us to Class Plaintiffs v. City of Seattle, 955 F.2d 1268 (9th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 408, 121 L.Ed.2d 333 (1992). It is true that in Class Plaintiffs a class action settlement released claims against Washington state, a third party. The state, however, had paid $10 million for this protection. Id. at 1290. Counsel also referred us to the "wealth of authority" holding that courts can release claims not at issue in the class action, citing specifically to Class Plaintiffs and Thompson v. Edward D. Jones & Co., 992 F.2d 187 (8th Cir.1993) (barring later Valk-type claims specific to an individual class member rather than general to the class). In Thompson, however, the defendant who bargained for the settlement in the class action was also the defendant in the subsequent suit. We have found no cases in which a release protected noncontributing third parties like Dean Witter; in addition to being apparently unprecedented in federal case law, such a free ride for bad actors is counter-intuitive.
 
 
 24
 Nevertheless, it is the district court's interpretation of the intent of the parties that controls ambiguous passages in a consent judgment. See Case, 907 F.2d at 66. We review for clear error only. Here, the district court, with the benefit of having conducted several hearings prior to entry of the consent judgment, has concluded that Dean Witter is likely to be able to prove that the class plaintiffs actually intended to release for free third-party brokers like Dean Witter from liability for bad acts which 1) Y & A had no responsibility for and could not possibly be indemnified for; and 2) affected only individuals rather than the class. While at first blush this may appear to be a surprising outcome, we are not convinced the district court clearly erred in so holding.
 
 
 25
 The order is affirmed.
 
 
 26
 RICHARD S. ARNOLD, Chief Judge, concurring in the judgment.
 
 
 27
 I concur in the Court's affirmance of the order of the District Court and in much of its opinion. I write separately to emphasize a factor not mentioned by the Court which, for me, is dispositive.
 
 
 28
 The District Court entered an Order and Final Judgment on April 30, 1993, giving final approval to the settlement of the class action. This Order not only contains the release relied upon by Dean Witter in this case, but also provides that all class members "shall be barred and enjoined from bringing any ... claim" covered by the release. Thus, for plaintiff to press his claim now in arbitration is a violation of an injunction entered by the District Court before the arbitration proceeding began.
 
 
 29
 In general, when parties agree to submit a matter to arbitration, they contract for the arbitrator's decision on legal questions as well as questions of fact. Such legal questions would include defenses, such as res judicata, and I do not read this Court's opinion today to hold generally that courts may, by injunction, control the decision of arbitrators on questions of issue or claim preclusion. In the present case, though, the judgment in question also included an express injunction barring relitigation, and I would be most reluctant to say that a court cannot enforce its own pre-existing injunctive order, notwithstanding subsequent invocation of the arbitration process by one of the parties to the case that resulted in the injunction. Among other things, violation of an injunction is of course contempt of court, and the Federal Arbitration Act should not be construed to divest courts of their traditional powers to punish for contempt.
 
 
 30
 For these reasons, I agree that the order of the District Court should be affirmed.
 
 
 
 [1]
 The Honorable Carol E. Jackson, United States District Judge for the Eastern District of Missouri