

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-10-1998

# John Hancock Insur. Co. v. Olick

Precedential or Non-Precedential:

Docket 97-1956

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"John Hancock Insur. Co. v. Olick" (1998). *1998 Decisions.* Paper 189.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/189

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed August 10, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-1956

JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY;
JOHN HANCOCK DISTR; LARRY CARTER

      Appellants

v.

THOMAS W. OLICK

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 96-cv-04460)

Submitted Under Third Circuit LAR 34.1(a)
June 4, 1998

Before: SCIRICA, NYGAARD and SEITZ, Circuit Ju dges.

Filed: August 10, 1998

      Edward C. Mengel, Jr., Esquire
      Jane O. McCahill, Esquire
      White & Williams
      1800 One Liberty Place
      Philadelphia, PA 19103-7395
       Attorneys for Appellants

Thomas W. Olick, Pro se
4014 Crestview Avenue
Easton, PA 18045

OPINION OF THE COURT

SEITZ, Circuit Judge.

This appeal presents the question of whether, under the Federal Arbitration Act, 9 U.S.C. SS 1-16 ("the FAA" or "the Act"), a district court has the authority, notwithstanding a valid arbitration clause, to enjoin a party from pursuing arbitration on res judicata grounds arising from both a prior arbitration and a prior judgment. The district court exercised diversity jurisdiction pursuant to 28 U.S.C. S 1332 as well as federal question jurisdiction under 28 U.S.C. S 1331 based on the alleged violations of the securities laws. Because the issues raised in the context of this appeal are purely legal, our standard of review is plenary. See Smith v. Magras, 124 F.3d 457, 460-61 (3d Cir. 1997).

I. Facts and Procedural History

On October 13, 1992, John J. Carroll and others sued John Hancock Distributors, Inc. ("Hancock") and eighteen other defendants in Carroll v. Hancock, 92-cv-5907 (E.D. Pa. 1995). The complaint primarily alleged violations of several federal and state statutes, along with various common law fraud theories, in connection with a series of limited partnership transactions. Thomas Olick ("Olick"), a former employee of Hancock and a registered life insurance agent, was a named defendant in the Carroll action. Olick attempted to assert a cross-claim against Hancock in the Carroll litigation, but the district court denied the claim in its entirety. The case was closed on November 30, 1994.

During the pendency of that litigation, Olick filed, on December 2, 1992, a Statement of Claim with the National Association of Securities Dealers ("NASD") against Hancock, demanding the arbitration of disputes relating to certain limited partnership transactions -- the same transactions,

2

according to Hancock, that were the subject of the Carroll action. The NASD, on February 28, 1995, issued an arbitration award in favor of Olick and denied a number of third party claims asserted by Hancock. The record does not show that Hancock objected to the 1992 NASD arbitration based on the existence of the then pending Carroll litigation.

On May 4, 1996, after the conclusion of both the Carroll case and the 1992 NASD arbitration, Olick filed with the NASD another Statement of Claim against Hancock seeking the arbitration of claims sounding in fraud, misrepresentation, tortious interference with business relations, slander, libel, and RICO violations. In response, Hancock moved the arbitration panel to dismiss this claim based on the res judicata effect of the prior 1992 arbitration award and the judgment rendered in the Carroll action. Hancock in particular argued that Olick's 1996 Statement of Claim arose from the same factual circumstances as the previous arbitration in 1992 as well as the prior federal judgment, and therefore principles of res judicata barred Olick from raising a claim that could have been raised at either the prior arbitration proceeding or the Carroll litigation. The arbitration panel, on February 11, 1997, denied Hancock's motion to dismiss without a hearing or a discussion of the merits. So far as we are aware, that proceeding is still pending.

Before the arbitration panel had denied Hancock's motion to dismiss the second arbitration, Hancock filed a complaint in the district court seeking a declaration that the claims raised by Olick in the 1996 arbitration were barred on res judicata grounds. Hancock also filed in the district court a motion seeking to preliminarily enjoin the NASD from further proceedings in resolution of the 1996 arbitration. The district court, however, denied Hancock's motion and dismissed its complaint, holding that under the Federal Arbitration Act the arbitrator, and not the court, decides preclusion issues. While the district court noted what was, in its view, an absence of third circuit case law directly on point, it found persuasive a line of cases holding that courts are not to rule on the validity of various defenses to arbitration. See Conticommodity Services, Inc. v.

Philipp & Lion, 613 F.2d 1222, 1223 (2d Cir. 1980)
(timeliness of demand decided by arbitrator); North River
Ins. Co. v. Allstate Ins. Co., 866 F. Supp. 123, 129 (S.D.N.Y.
1994) (res judicata decided by arbitrator).

In its order denying Hancock's motion for
reconsideration, the district court declined to apply case
law holding that courts, and not arbitrators, are to decide
res judicata issues stemming from a prior judgment
rendered by federal court. The district court found those
cases distinguishable because they failed to address what it
viewed as the "hybrid" situation raised -- namely, "whether
an arbitrator or a federal court should determine the res
judicata effect of both a prior arbitration and a prior federal
court decision on an arbitration claim." D. Ct. Order, Nov.
11, 1997, at 2 (emphasis in original). Hancock now appeals
the district court's dismissal of its complaint and the denial
of its motion for a preliminary injunction.

II. Appellate Jurisdiction

As a preliminary matter, Olick contests this court's
jurisdiction to entertain this appeal. Section 16 of the FAA
governs the appealability of district orders with respect to
arbitration and provides:

> (a) An appeal may be taken from--
>
> (1) an order--
>
>  (A) refusing a stay of any action under sectio n 3 of
> this title,
>
>  (B) denying a petition under section 4 of this  title to
> order arbitration to proceed,
>
>  (C) denying an application under section 206 o f this
> title to compel arbitration,
>
>  (D) confirming or denying confirmation of an award
> or partial award, or
>
>  (E) modifying, correcting, or vacating an award;
>
>  (2) an interlocutory order granting, continuing, or
> modifying an injunction against an arbitration
> that is subject to this title; or

4

> (3) a final decision with respect to an arbitrat ion that is subject to this title.

9 U.S.C. S 16(a). While identifying the district court orders with respect to arbitration that are the subject of immediate appeal, the Act affirmatively removes appellate jurisdiction to review certain types of "interlocutory" orders:

> (b) Except as otherwise provided in section 1292(b ) of title 28, an appeal may not be taken from an interlocutory order--
>
> (1) granting a stay of any action under section 3 of this title;
>
> (2) directing arbitration to proceed under section  4 of this title;
>
> (3) compelling arbitration under section 206 of th is title; or
>
> (4) refusing to enjoin an arbitration that is subj ect to this title.

9 U.S.C. S 16(b). The general approach to appellate jurisdiction as set forth in the FAA is constrained; the Act typically precludes appellate review of orders allowing arbitration "until after the arbitration process has gone forward." Stedor Enterprises, Ltd. v. Armtex, Inc., 947 F.2d 727, 730 (4th Cir. 1991); see also David D. Siegal, Practice Commentary, 9 U.S.C.A. S 16, at 352 (West Supp. 1997). Nevertheless, the FAA specifically states that any"final decision with respect to an arbitration," is immediately appealable, 9 U.S.C. S 16(a)(3), regardless of whether that decision allows the arbitration process to go forward. See Siegal, supra, at 352. Thus, the answer to the immediate question in considering our appellate jurisdiction critically turns on whether the district court orders were"final" or "interlocutory," and consequently subject to the jurisdictional hurdles set forth in section 16(b). See American Cas. Co. of Reading v. L-J, Inc., 35 F.3d 133, 136 (4th Cir. 1996).

Congress did not define a "final decision" for purposes of this section, and therefore we look to the prior, settled, usage of that term. A final decision, as that term is

5

commonly understood for purposes of appellate jurisdiction, refers to an order that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Oritz v. Doge, 126 F.3d 545, 547 (3d Cir. 1997) (quoting Catlin v. United States, 324 U.S. 229, 233 (1945)). Within the context of orders relating to arbitration, the decisive issue is "whether arbitrability was the sole issue presented in the action or whether the issue of arbitrability originated as part of an action raising other claims for relief." American Cas., 35 F.3d at 136; see also F.C. Schaffer & Assoc. v. Demech Contractors, Ltd. , 101 F.3d 40, 41 (5th Cir. 1996). If the arbitration issue arises in what is known as an "embedded proceeding"-- that is, embedded in some broader context raising issues or claims for relief outside the arbitration context -- then the district court order addressing arbitration cannot be considered a final order subject to immediate appeal under section 16(a)(3) and the appellant must search for another avenue of appellate jurisdiction under section 16(a). See Siegal, supra, at 352. Conversely, an appeal from an "independent proceeding" raising solely arbitration issues with no other claims for relief falls under section 16(a)(3) as an appeal from a final order because the litigation before the district has effectively ended on the merits. Id. at 352-53. It matters not whether the district court decision favors arbitration or litigation. Id.

In this case, Hancock sought both legal and injunctive avenues for relief: a judgment declaring Olick barred from arbitration under the doctrine of res judicata, and an injunction halting the NASD from entertaining Olick's demand for arbitration. At first blush, it may be argued, as Olick seems to do, that Hancock's motion for a preliminary injunction is embedded within the broader complaint seeking a declaratory judgment, and hence the district court's denial of that injunction is not appealable under section 16(a)(3) or section 16(b)(4). Yet, there was only one issue before the district court, and that was whether Olick might properly seek arbitration of his claims against Hancock. When the district court decided that single issue in favor of arbitration, the litigation effectively ended, leaving nothing for the district court to do but enter judgment. Accordingly, this independent proceeding before

the district concluded in a final order and is therefore appealable under 9 U.S.C. S 16(a)(3).

III. The Federal Arbitration Act

Having established our jurisdiction, we now turn to the merits of this appeal. Because this case raises questions about the scope of the duty to honor an arbitration agreement, our analysis must begin with the Federal Arbitration Act. The FAA federalizes arbitration law and "creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate . . . ." Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25 n. 32 (1983). The operative language in the Act, as provided in section two, states that:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. S 2. The parties agree that the arbitration agreement at issue falls within the ambit of the FAA.

Because the FAA enforces arbitration agreements as a matter of federal law, the statute authorizes district court involvement in the arbitration process primarily in two ways. See Local 103 of the Int'l Union of Elec., Radio and Mach. Workers v. RCA Corp., 516 F.2d 1336, 1339 (3d Cir. 1975). One such function of the court arises when a party resists arbitration under an existing arbitration clause. In this case, the FAA allows a district court to compel, or enjoin, arbitration as the circumstances may dictate. See 9 U.S.C. SS 3, 4; Painewebber v. Hartmann , 921 F.2d 507, 511 (3d Cir. 1990). The other basis of court involvement is found when enforcement of an arbitration award is sought. Here, the statute authorizes the district court to confirm,

7

vacate, or modify the award under a narrow scope of judicial review. 9 U.S.C. SS 9-11.

Beyond these two areas, the statute does not authorize court involvement in enforcing arbitration and we have consistently admonished the courts "to exercise the utmost restraint and to tread gingerly before intruding upon the arbitral process." Lewis v. American Fed'n of State, County and Municipal Employees, 407 F.2d 1185, 1191 (3d Cir. 1969); see also Local 103 of the Int'l Union of Elec., Radio and Mach. Workers v. RCA Corp., 516 F.2d 1336, 1339 (3d Cir. 1975). There is, of course, good reason for this restrained approach. Arbitration is, above all, a matter of contract and courts must respect the parties' bargained-for method of dispute resolution. See Local 1545, United Mine Workers Of Am., 876 F.2d 1288, 1293 (7th Cir. 1989). Indeed, arbitration most often arises in areas where courts are at a significant experiential disadvantage and arbitrators, who understand the "language and workings of the shop," may best serve the interest of the parties. See United Steelworkers of Am. v. Enterprise Wheel and Car Corp., 363 U.S. 593, 596 (1960); RCA Corp. , 516 F.2d at 1340. Thus, there is a strong policy in favor of arbitration and courts must resist the attempt to intrude upon arbitration proceedings where the statute does not explicitly authorize court involvement.

Turning to the district court's authority to enjoin arbitration, which is the heart of this dispute, we again explore the nature of the district court's involvement in the arbitration process. Here, the FAA states that a court may issue an order compelling arbitration only "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. S 4. Starting with the familiar proposition that arbitration is a creature of contract, courts have long since drawn the conclusion that, as a matter of contract, no party can be forced to arbitrate an issue unless that party has entered into an agreement to do so. See AT&T Technologies v. Communication Workers of Am., 475 U.S. 643, 648 (1986). Because the competence of an arbitrator stems exclusively from contract, a district court may only order, or enjoin, arbitration based on the agreement to arbitrate itself. Id.

8

This includes, as a matter of course, an exploration into whether the parties entered into a valid arbitration agreement in the first instance, and whether the specific dispute raised falls within the scope of that agreement. See In re Prudential Ins. Co. of Am. Sales Practice Litig., 133 F.3d 225, 228 (3d Cir. 1998).

Thus, the threshold questions a district court must answer before compelling or enjoining arbitration are these: (1) Did the parties seeking or resisting arbitration enter into a valid arbitration agreement? (2) Does the dispute between those parties fall within the language of the arbitration agreement? See In re Prudential, 133 F.3d at 128, 133; Painewebber, 921 F.2d at 511. Absent a compelling federal policy to the contrary, see Shearson/American Express Inc. v. McMahon, 482 U.S. 220 (1989), the sina qua non of arbitrability is simply stated: that a valid arbitration exists and the dispute falls within the contours of that agreement. In re Prudential, 133 F.3d at 128. As we have previously concluded, district courts need only "engage in a limited review to ensure that the dispute is arbitrable-- i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." Painewebber, 921 F.2d at 511. In conducting this limited review, the court must apply ordinary contractual principles, with a healthy regard for the strong federal policy in favor of arbitration. Moses H. Cone, 460 U.S. at 24; In re Prudential, 133 F.3d at 128.

A. The Res Judicata Dispute Between the Parties

As the district court recognized, this case presents somewhat of a "hybrid" situation in that Hancock's objection to arbitrating Olick's claims stems from both a prior arbitration and a prior federal judgment. Apparently, no case to date has addressed this precise factual complex, and we will analyze each component of Hancock's position in turn.

1. Res Judicata Based on a Prior Federal Judgment

Notwithstanding the analysis discussed above, many federal courts have held as a matter of law that claims of

9

res judicata based on a prior federal judgment must be decided by the district court before compelling or enjoining arbitration. See, e.g., In re Y&A Group Sec. Litig., 38 F.3d 380, 382 (8th Cir. 1994); Kelly v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 985 F.2d 1067, 1069 (11th Cir. 1993); Miller Brewing Co. v. Forth Worth Distrib. Co., 781 F.2d 794, 499 (5th Cir. 1986); see also Miller v. Runyon , 77 F.3d 189, 194 (7th Cir. 1996) (collecting other cases). These courts typically reason that federal courts must protect the finality and integrity of prior judgments. See Kelly, 985 F.2d at 1069; In re Y&A, 38 F.3d at 382. As succinctly stated by the Eleventh Circuit Court of Appeals, federal "[c]ourts should not have to stand by while parties re-assert claims that have already been resolved." Kelly, 985 F.2d at 1069. Because the FAA contemplates that an arbitration award may be enforced by judgment, see 9 U.S.C.S 9, these courts would allow a district court to enjoin arbitration if the claim would be precluded under ordinary rules of res judicata. Miller Brewing Co., 781 F.2d at 499.

Not all courts, however, have been persuaded by such logic. Most notably, the Second Circuit Court of Appeals has held that a collateral estoppel defense to arbitration based on a prior federal judgment should be decided by an arbitrator because it is a merit-based defense to arbitration. See United States Fire Ins. Co. v. National Gypsum Co., 101 F.3d 813, 817 (2d Cir. 1996). Whether such a defense is itself arbitrable, like any other ambiguity in the scope of arbitration, must stem from the language of the arbitration agreement itself because arbitration is a matter of contract and a "defense based on the issue preclusive effect of the prior judgment is part of the dispute on the merits." Id. Thus, the court reasoned, unless it may be said "with positive assurance" that the parties intended to place the collateral estoppel issue with a court, the viability of that affirmative defense must be decided by an arbitrator. Id.

These competing considerations present the court with a high order challenge. On the one hand, a realistic concern for the finality and integrity of judgments would arise if parties were free to ignore federal court decisions that have conclusively settled claims or issues now sought to be arbitrated. Yet, arbitration is a matter of contract and the

10

FAA only authorizes a "limited review" of the parties' intent before compelling or enjoining arbitration. See Painewebber, 921 F.2d at 511. The issue is thoughtfully discussed in Miller v. Runyon, 77 F.3d 189, 193–94 (7th Cir. 1996), but that court fell short of providing a comprehensive answer. In the final analysis, we conclude that a decent respect for a precedent of this court dictates that we resolve the issue in favor of district court jurisdiction to decide the res judicata defense as it relates to a prior judgment. Thus, we stated in Telephone Workers Union of New Jersey v. New Jersey Bell Tel. Co., 584 F.2d 31 (3d Cir. 1978):

> The district court did not reach the merits of the Board of Arbitrators' interpretation of the Collective Bargaining Agreement. It turned, first, to the judgment preclusion effect of the Consent Decree. This was the proper course. When a federal court is presented with the contention that a prior federal judgment determined issues now sought to be relitigated in an arbitral forum it must first determine the effect of the judgment. This is so whether the question arises in an action to compel arbitration or, as here, in an action to enforce a disputed award. The federal policy favoring forum selection clauses, based in part on the institutional interest of federal courts in avoiding litigation, does not come into play until the courtfirst determines whether prior completed litigation has already finally determined all issues.

Id. at 32–33 (citation omitted). In that case, an aggrieved employee sought arbitration of a matter that had been conclusively settled by a consent decree entered by a federal district court. Arbitration had in fact rendered a result that conflicted with the consent decree and the district court, in considering a motion to enforce the arbitrator's award, turned first to the issue preclusive effect of the consent decree. We affirmed on the principle that a district court must first determine the effect of a prior federal judgment when faced with the possibility of relitigating issues already settled by that judgment. Moreover, we explicitly stated that this was the correct course regardless of whether parties seek to compel arbitration or confirm a disputed award.

11

The district court did not apply our analysis in New Jersey Bell to this case because of the unique"hybrid" res judicata objection raised by Hancock -- "hybrid" in the sense that Hancock's claim of preclusion stems from both a prior judgment and a prior arbitration. We find no principled reason underlying this distinction. When a party resisting arbitration bases its claim of res judicata not only on a prior judgment but also on the existence of a prior arbitration, the analysis must focus on each aspect of the claim; hybrid facts do not call for a hybrid analysis. To be sure, there may be a number of factual grounds to distinguish our holding in New Jersey Bell, but the legal principle announced in that case directly controls the issue presented before the district court -- in particular, whether an arbitrator or a court must decide the preclusive effect of a prior federal judgment. Given the broadly worded language in that case, many courts have read New Jersey Bell, as do we, for the proposition the federal courts must intervene in the arbitration process when faced with res judicata objections stemming from a prior federal judgment. See Aircraft Braking Systems Corp. v. Local 856, Int'l Union, United Auto., Aerospace and Agric. Implement Workers , 97 F.3d 155, 159 (6th Cir. 1996); John Morrell & Co. v. Local Union 304a of the United Food and Commercial Workers , 913 F.2d 544, 562 (8th Cir. 1990); American Trade Dispatchers Assoc. v. Burlington N. R.R., 784 F. Supp. 899, 903 (D.D.C. 1992). Thus, whether we honor our internal operating procedure governing the application of this court's precedent, see 3d Cir. IOP Chapter 9.1. ("[T]he holding of a panel in a reported opinion is binding on subsequent panels.") (emphasis added), or apply the pertinent language in New Jersey Bell, we conclude that the district court in this case should have first decided the preclusive effect of the prior federal judgment as it relates to Olick's demand for arbitration before the NASD.

2. Res Judicata Based on the Prior Arbitration

The question remains, however, whether the district court, under the FAA, may consider the preclusive effect of the prior NASD arbitration as a basis for enjoining the current NASD proceeding. We now turn to that issue.

12

As stated above, the judicial inquiry before compelling or enjoining arbitration is narrow, and the FAA authorizes the district court to explore only two threshold questions in considering a demand for arbitration: (1) Did the parties seeking or resisting arbitration enter into a valid arbitration agreement? (2) Does the dispute between those parties fall within the language of the arbitration agreement? See In re Prudential, 133 F.3d at 128, 133; Painewebber, 921 F.2d at 511. While we have previously held that claims of res judicata based on a prior federal judgment are an exception, see Telephone Workers Union of New Jersey v. New Jersey Bell Tel., 584 F.2d 31–32 (3d Cir. 1978), res judicata objections based on a prior arbitration do not implicate the institutional concerns underlying that holding. Therefore, the proper analytical inquiry mandated under the FAA is to focus on both the existence of a valid arbitration agreement and the nature of that agreement as it relates to the parties' current dispute.

We have previously held, for example, that where there is a contractual provision barring the re-arbitration of similar disputes between parties, the arbitrator is to decide the preclusionary effect, if any, of a previous arbitration. See Local 103 of the International Union of Elec., Radio, and Mach. Workers v. RCA Corp., 516 F.2d 1336, 1340 (3d Cir. 1975). The reasoning underlying this approach is that a provision regarding the finality of arbitration awards is a creature of contract and, like any other contractual provision that is the subject of dispute, it is within the province of arbitration unless it may be said "with positive assurance" that the parties sought to have the matter decided by a court. Id. Although the contractual provision before the RCA court specifically stated that "in no event . . . shall the same question or issue be the subject of arbitration more than once," this court approved the same reasoning when faced with a broader agreement between parties that arbitration awards are "final and binding." Id. at 1341; see also Local 616, International Union of Elec., Radio, and Mach. Workers v. Byrd Plastics, Inc., 428 F.2d 23, 25 (3d Cir. 1970).

The parties' arbitration agreement in this case may be found in the "Uniform Application for Securities Industry

13

Registration," ("Form U-4") signed by Olick, which submits to the NASD "any dispute, claim, or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations with which I registered." Form U-4 P 5. The NASD Code of Arbitration Procedure provides for the "arbitration of any dispute, claim, or controversy arising out of or in connection with the business of any member of the Association, with the exception of disputes involving the insurance business of any member which is also an insurance company . . . ." NASD Code of Arbitration Procedure P 3701. The parties do not contest the validity of the arbitration agreement here, nor do they dispute that Olick's claims raised before the NASD properly fall within the scope of the arbitration clause. Indeed, both Olick and Hancock explicitly agreed to "submit the present matter in controversy, as set forth in the . . . statement of claim, answers, cross claims and all related counterclaims and/or third party claims which may be asserted, to arbitration . . . ." NASD Uniform Submission Agreement P 1, Def.'s App. at 1. The only remaining question, therefore, is whether the parties intended the current controversy -- whether the prior NASD award precludes Olick from asserting his claims -- to be arbitrated as well.

The arbitration procedure agreed to here, as incorporated in the arbitration agreement, states that all arbitration awards are to be "final and not subject to review or appeal." NASD Code of Arbitration Procedure P 10330(b). Moreover, the parties agreed that "arbitrators shall be empowered to interpret and determine the applicability of all provisions under this Code and to take appropriate action to obtain compliance with any ruling by the arbitrator(s)." Id. P 10324. The NASD Code of Arbitration Procedure further provides that "[s]uch interpretations and actions to obtain compliance shall be final and binding upon the parties." Id.

Given this language, we must conclude that Hancock's res judicata objection based on the prior arbitration is an issue to be arbitrated and is not to be decided by the courts. The procedural rules quoted above no doubt demonstrates the parties' intentional adherence to a

14

binding principle of finality similar to res judicata as applied to arbitration awards rendered by the NASD. It is equally quite clear from the arbitration procedure adopted here that the parties intended the NASD, and not the district court, to determine the nature and extent, if any, of that finality. Accordingly, the district court correctly declined to decide Hancock's res judicata objection based on the prior NASD award.

IV. Conclusions

For the reasons stated in this opinion, we will reverse the order of the district court dismissing the complaint and denying the preliminary injunction to the extent that it provides that Hancock's res judicata defense based on the prior judgment is an issue for resolution by the arbitrator. We, of course, express no opinion on the merits of that affirmative defense. To the extent the order of the district court dismissed Hancock's res judicata defense based on the prior arbitration, we will affirm. Accordingly, this case will be remanded for such further proceedings as may be appropriate.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

15